USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _1-19-17_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARRY ROTHBAUM, | |
| Plaintiff, | 16-cv-02387 (ALC) |
| -against- | **OPINION AND ORDER** |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Garry Rothbaum, on behalf of himself and all others similarly situated, brings this suit against Bank of America, N.A. alleging that Bank of America breached his Home Equity Line of Credit agreement. Bank of America has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, Defendant's motion to dismiss is granted.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the allegations in Plaintiff's Complaint, which are presumed to be true for purposes of this motion to dismiss.

On or about September 21, 2007, Plaintiff Garry Rothbaum obtained a Home Equity Line of Credit from Defendant Bank of America, N.A., secured by Plaintiff's real property in New York. ECF No. 1 (Complaint ("Compl.")), at ¶¶ 7, 27. The terms governing Plaintiff's line of credit are documented by an Equity Maximizer Agreement and Disclosure Statement (the "Agreement"). *Id.* ¶ 12; *see also* ECF No. 11 (Declaration of Jeffrey J. Chapman dated May 24,

1

2016 ("Chapman Decl.")), Ex. A (Agreement).[1] Pursuant to the Agreement, Plaintiff could request periodic advances from the bank up to the maximum of his $250,000 line of credit. Agreement §§ 1, 4. At Plaintiff's request, Defendant would loan the requested amount to Plaintiff, who was required to pay back that amount, plus interest and fees. Interest payable on advances is defined in the Agreement as "finance charges," and accrued daily from the date Plaintiff requested any advance on his line of credit. *Id.* § 12.

In addition to required monthly payments, the Agreement allowed Plaintiff to make prepayments without penalty. *Id.* § 23. However, upon any prepayment, Defendant was "entitled to receive all accrued FINANCE CHARGES and any other accrued fees or charges." *Id.* During the life of the Agreement, Plaintiff made numerous prepayments on his line of credit. Compl. ¶¶ 28-29. He contends that, pursuant to the Agreement and a "Frequently Asked Questions" document ("FAQs") he received from Defendant, the bank should have applied these prepayments exclusively towards his outstanding principal, as he requested. *Id.* ¶¶ 16-17, 28.[2] The FAQs provide that borrowers may make "principal-only payments" by designating their payment as such. *Id.* ¶¶ 16-17. Instead, Defendant applied Plaintiff's prepayments to both his outstanding principal and accrued finance charges, which caused Plaintiff to pay a greater amount of interest over time. *Id.* ¶¶ 29-30.

---

[1] Plaintiff's Equity Maximizer Agreement and Disclosure Statement is the agreement that forms the basis for his breach of contract claim, and accordingly, the Court may consider it on this motion to dismiss as incorporated by reference into the Complaint. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

[2] Plaintiff does not allege that he directed his prepayments to be applied to his principal only. However, given that Defendant's failure to apply Plaintiff's prepayments in that manner forms the entire basis for this action, for purposes of this motion to dismiss, the Court will presume that Plaintiff, in fact, so directed Defendant.

## II.   Procedural History

Plaintiff initiated this action in the Supreme Court of the State of New York, New York County by filing a Complaint dated February 29, 2016.  ECF No. 1.  Defendant subsequently removed the action to the Southern District of New York pursuant to the Class Action Fairness Act of 2005, 18 U.S.C. §§ 1332, 1453.  *Id.*  In the Complaint, Plaintiff pursues a single cause of action for breach of contract.  Specifically, Plaintiff contends that the application of his prepayments to finance charges constitutes a penalty within the meaning of the Agreement and is a violation of New York law.  Compl. ¶¶ 40-41; Agreement § 23.  Plaintiff further alleges that Defendant's practice of applying prepayments to both principal and finance charges is contrary to the FAQs Defendant provided him.  Compl. ¶ 16.

On May 24, 2016, Defendant moved to dismiss the Complaint in its entirety.  ECF Nos. 10 (Motion), 11 ("Def's Memo."), 12 (Chapman Decl.).  Plaintiff filed his response on July 6, 2016, ECF No. 15 ("Pl's Memo."), and Defendant submitted its reply on July 19, 2016, ECF No. 16 ("Def's Reply").  Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture*, 602 F.3d at 64 (citation and internal quotation marks omitted).

## DISCUSSION

The parties agree that New York law governs this action pursuant to the terms of the Agreement. *See* Agreement § 31. To state a cause of action for breach of contract in New York, a plaintiff "must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citation and internal quotation marks omitted). The parties' disagreement boils down to whether Plaintiff was entitled to direct Defendant to apply his prepayments to his principal alone, to the exclusion of any accrued finance charges. Because the Court finds that the Agreement did not afford Plaintiff that right,

Defendant did not breach the Agreement by failing to honor Plaintiff's request. Accordingly, the Complaint is dismissed.

I.  **The FAQs Are Inadmissible Parol Evidence**

Plaintiff does not contend that anything in the Agreement itself allowed him to direct the manner in which Defendant applied his prepayments. Rather, Plaintiff relies on the FAQs he allegedly received in connection with his line of credit, which describe how to make "principal-only payments." Compl. ¶¶ 16-17. Defendant argues that these FAQs, as interpreted by Plaintiff, contradict the plain terms of the Agreement, and therefore should not be considered by the Court. Def's Reply at 3-5. The Court agrees.

On a motion to dismiss, "a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund*, 800 F.3d at 156. The question of whether a contract is ambiguous is one for the court to decide as a matter of law. *Id.* In New York, a contract is "not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)) (alteration in original).

Particularly relevant here, under the parol evidence rule, a court may not consider evidence outside of the four corners of the contract if the agreement is unambiguous. *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466-67 (2d Cir. 2010). Where, as here, an agreement contains a merger or integration clause, it "require[s] the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816

(2d Cir. 2014) (quoting *Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 669 (2001)) (internal quotation marks omitted); *see also* Agreement § 29.

Section 23 of the Agreement provides that Plaintiff "may prepay all or any amounts owing under this Credit Line at any time without penalty. However, [Defendant] will be entitled to receive all accrued FINANCE CHARGES and any other accrued fees or charges." Plaintiff does not argue that this language is ambiguous—and it is not. Rather, he simply ignores the second sentence entirely. Pl's Memo. at 11. Consequently, notwithstanding the unambiguous statement that Defendant "will be entitled to receive all accrued FINANCE CHARGES" in connection with any prepayments, Plaintiff contends that the FAQs allowed him to direct Defendant to apply his entire prepayment towards his outstanding principal. Pl's Memo. at 14-15; Compl. ¶¶ 16-17. Plaintiff concedes that, per the terms of the Agreement, finance charges begin to accrue on the date an advance is paid and are calculated daily, and that finance charges had, in fact, accrued on his account. Pl's Memo. at 2, 9-10; *see also* Agreement § 12. Plaintiff does not adequately explain how these two concepts—Defendant's entitlement to accrued finance charges upon prepayment and Plaintiff's ability to direct entire prepayments to his principal—can be read consistently, and it appears they cannot.

Defendant's right to receive finance charges is well established in the Agreement and, therefore, to read § 23 as merely reiterating Defendant's entitlement to finance charges in connection with ordinary, monthly payments would render it superfluous. *See CP III Rincon Towers, Inc. v. Cohen*, --- F. App'x ---, 2016 WL 6989480, at *5 (2d Cir. Nov. 29, 2016) ("It is well-established that we disfavor readings of a contract that render provisions of an agreement superfluous.") (citing *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002)). For the second sentence of § 23 to have any meaning in the context of the entire

6

Agreement, it must be understood to provide Defendant with the right to receive all accrued finance charges when the prepayment is made.

Therefore, Plaintiff's interpretation of "accrued" finance charges as only those due with ordinary monthly repayments at the end of a billing cycle is unavailing. *See* Pl's Memo. at 10.[3] Accordingly, Plaintiff cannot rely on the FAQs to limit Defendant's clear right to receive accrued finance charges upon prepayment because it would impermissibly "alter, vary or contradict the terms" of the Agreement. *See Jarecki*, 95 N.Y.2d at 669. As Plaintiff was not entitled to direct his prepayments exclusively towards his outstanding principal without also paying any accrued finance charges, Defendant did not breach the Agreement by failing to honor such a request.

## II.     Payment of Accrued Finance Charges upon Prepayment Is Not a Penalty

Plaintiff argues that "applying a portion of [his] Principal-Only Payments to continuously accruing Finance Charges and then to [his] outstanding principle pursuant to an undisclosed 'term' constitutes a 'penalty' in violation of the Prepayment Clause." Pl's Memo. at 11. However, as discussed above, Plaintiff did not have the right to direct Defendant to apply his prepayments to his outstanding principal alone. There is no "undisclosed term." Accordingly, Defendant's decision to apply a portion of Plaintiff's prepayment to precisely where the Agreement said it would go (that is, to accrued finance charges) does not constitute a penalty.

Similarly, Plaintiff's somewhat hyperbolic argument that being required to pay continuously accruing finance charges would "severely restrict[], if not completely eliminate[]" Plaintiff's ability to make prepayments also fails. Pl's Memo. at 11. Critically, Plaintiff does not

---

[3] Plaintiff makes a similar argument with respect to § 8 of the Agreement, which allows Defendant to apply "payments and other credits . . . to FINANCE CHARGES, other charges and fees, and principal in any order [Defendant] choose[s] without notice." *See* Pl's Memo. at 15-16. It fares no better in this context and, in any event, section 8 of the Agreement is not necessary to find in favor of Defendant on this motion.

7

argue that he would not have had to pay the accruing finance charges eventually, only that the interest presumably would be lower in the aggregate if his prepayments had been credited exclusively to his principal. But, again, Defendant's right to receive accrued finance charges upon prepayment was clear on the face of the Agreement and so, too, should have been the potential ramifications of that right.

### III. Applying a Portion of Plaintiff's Prepayment to Accrued Finance Charges Did Not Violate Applicable Law

Plaintiff also argues that directing a portion of his prepayments to accrued finance charges violated New York law, particularly *Snide v. Larrow*, 62 N.Y.2d 633 (1984). Pl's Memo. at 16-17. In *Snide*, the New York Court of Appeals noted that "[t]he general rule is that the debtor may direct the application of his payments, but if he fails to do so, then the creditor is permitted to apply the payments as he sees fit." 62 N.Y.2d at 634. However, as Defendant notes, nothing in *Snide* precludes parties from contractually limiting the manner in which a borrower's payment can be applied; *Snide* simply states the "general rule." Def's Memo. at 9; Def's Reply at 10. None of the decisions citing *Snide* have relied on this common law rule to supplant the language of a contract, and the New York Court of Appeals' earlier decision in *Marine Midland Bank-S. v. Thurlow*, 53 N.Y.2d 381 (1981) suggests that this would be impermissible.

Unlike in *Snide*, in connection with a loan from plaintiff to defendant, the parties in *Marine Midland* executed an agreement that allowed plaintiff to "direct the 'order or manner of the disposition' of all the pledged collateral as plaintiff, 'in its sole discretion,' determined." 53 N.Y.2d at 387. The Court of Appeals therefore refused to consider evidence outside of the agreement that purported to dictate to plaintiff the manner in which it should apply any liquidated collateral to defendants' outstanding debt because such evidence would alter the

8

unambiguous terms of the agreement between the parties. *Id.* at 387-89. The circumstances presented here are quite similar and, like the court in *Marine Midland*, the Court declines to consider the FAQs to fundamentally change the terms to which the parties agreed. Therefore, Defendant's decision to direct a portion of Plaintiff's prepayments to accrued finance charges did not violate New York law, even if it was contrary to Plaintiff's express direction, because the decision was consistent with the terms of the Agreement.

## IV.    Leave to Amend

Defendant requests that Plaintiff's Complaint be dismissed with prejudice. Def's Memo. at 15. As a general matter, leave to amend should be "freely given." Fed. R. Civ. P. 15(a)(2). However, leave to amend may appropriately be denied if "the proposed amendment is futile." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Plaintiff's failure to state a cause of action for breach of contract is based on the unambiguous terms of the document underlying his breach of contract claim. Accordingly, any amendment would be futile, and leave to amend is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the Complaint is GRANTED. The Clerk of the Court is respectfully requested to close the case.

**SO ORDERED.**

Dated: January 19, 2017
       New York, New York

                                      _____
                                      **ANDREW L. CARTER, JR.**
                                      **United States District Judge**

9